# United States Court of Appeals
## *for the*
# First Circuit

Case No. 24-1286

MIYA WATER PROJECTS NETHERLANDS B.V.,

*Plaintiff-Appellant,*

v.

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO, SAN JUAN, IN CASE NO. 3:22-CV-01358-PAD,
HONORABLE PEDRO A. DELGADO-HERNÁNDEZ, DISTRICT JUDGE

## BRIEF FOR DEFENDANT-APPELLEE

TIMOTHY W. MUNGOVAN
JOHN E. ROBERTS
LAURA E. STAFFORD
ADAM L. DEMING
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
(617) 526-9600

GUY BRENNER
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW,
   Suite 600 South
Washington, DC 20004
(202) 416-6800

MARTIN J. BIENENSTOCK
MARK D. HARRIS
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3000

*Attorneys for Defendant-Appellee*

## **CORPORATE DISCLOSURE STATEMENT**

Appellee is not required to file a corporate disclosure statement under Federal Rule of Appellate Procedure 26.1 because it is not a non-governmental corporate party.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................1

STATEMENT OF ISSUES .....................................................................2

STATEMENT OF FACTS .......................................................................3

    A.    PROMESA ....................................................................3

    B.    TEPPRA ........................................................................5

    C.    Procedural History.........................................................6

        1.    Miya's TEPPRA Request and Suit ............................6

        2.    The Supreme Court's *CPI* Decision .........................7

        3.    Miya's Case Resumes ................................................8

SUMMARY OF ARGUMENT ...............................................................10

STANDARD OF REVIEW .....................................................................11

ARGUMENT ........................................................................................11

I.    TEPPRA DOES NOT WAIVE THE BOARD'S IMMUNITY IN A FEDERAL FORUM ............................................................................12

    A.    No Court Has Ever Relied on a Statute's Silence and Timing to Find a Waiver of Sovereign Immunity because That Is the Antithesis of a Clear Statement ............................................14

    B.    Even if a Statute's Silence and Timing Could Somehow Evidence an Unmistakably Clear Waiver, Those Factors Cut Against a Finding of Waiver Here ......................................15

II.    THE COMMONWEALTH'S WAIVER OF SOVEREIGN IMMUNITY IN ITS OWN COURTS DOES NOT CONSTITUTE WAIVER OF IMMUNITY IN FEDERAL COURT ...................................18

CONCLUSION .....................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acevedo Lopez v. Police Dep't of Com. of P.R.*,
    247 F.3d 26 (1st Cir. 2001)....................................................................20

*Arecibo Cmty. Health Care, Inc. v. Puerto Rico*,
    270 F.3d 17 (1st Cir. 2001)....................................................................12

*Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*,
    958 F.3d 26 (1st Cir. 2020)....................................................................20

*Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. González-Feliciano*,
    695 F.3d 83 (1st Cir. 2012)....................................................................20

*Davallou v. United States*,
    998 F.3d 502 (1st Cir. 2021)..................................................................11

*De Leon Lopez v. Corporacion Insular de Seguros*,
    931 F.2d 116 (1st Cir. 1991)..................................................................20

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
    601 U.S. 42 (2024)...........................................................12, 13, 14, 15

*Diaz-Fonseca v. Puerto Rico*,
    451 F.3d 13 (1st Cir. 2006)....................................................................20

*Edelman v. Jordan*,
    415 U.S. 651 (1974)...............................................................................19

*FAA v. Cooper*,
    566 U.S. 284 (2012)..............................................................13, 15, 17

*Fin. Oversight & Mgmt. Bd. For P.R. v. Centro de Periodismo Investigativo, Inc.*,
    598 U.S. 339 (2023).......................................................................*passim*

*Grajales v. P.R. Ports Auth.*,
  831 F.3d 11 (1st Cir. 2016)................................................................20

*Great N. Life Ins. Co. v. Reed*,
  322 U.S. 47 (1944).........................................................17, 18, 21

*Hosp. San Antonio, Inc. v. Oquendo-Lorenzo*,
  47 F.4th 1 (1st Cir. 2022)...............................................................17

*Irwin v. Dep't of Veterans Affairs*,
  498 U.S. 89 (1990).........................................................................13

*Lane v. Peña*,
  518 U.S. 187 (1996).......................................................................13

*Maysonet-Robles v. Cabrero*,
  323 F.3d 43 (1st Cir. 2003)...............................................11, 12, 20

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984).........................................................13, 19, 20

*Puerto Rico v. Sanchez Valle*,
  579 U.S. 59 (2016)..........................................................................20

*Scotiabank de P.R. v. Burgos*,
  741 F.3d 269 (1st Cir. 2014)...........................................................17

*United States v. Nordic Vill., Inc.*,
  503 U.S. 30 (1992)..........................................................................13

STATUTES, RULES, AND CONSTITUTIONS

3 L.P.R.A. § 9912 ............................................................................13

3 L.P.R.A. § 9913 ..............................................................................5

3 L.P.R.A. § 9914 ..............................................................................6

3 L.P.R.A. § 9915 ..............................................................................5

3 L.P.R.A. § 9917 ........................................................................5, 18

3 L.P.R.A. § 9919 ....................................................................6, 14, 16, 18

48 U.S.C. § 2121 ................................................................3, 4, 5

48 U.S.C. § 2124 ....................................................................4

48 U.S.C. § 2126 ...................................................7, 10, 19, 21

48 U.S.C. § 2128 ...............................................................3, 4, 8

48 U.S.C. § 2194 ....................................................................3

Fed. R. Civ. P. 12(b)(6) ..........................................................9

P.R. Const. art. II, § 4 ............................................................7

U.S. Const. art. IV, § 3 ...........................................................3

## PRELIMINARY STATEMENT

Just over a year ago, the Supreme Court held that the Financial Oversight and Management Board for Puerto Rico enjoyed sovereign immunity from a lawsuit under the Puerto Rico Constitution to obtain internal documents. *Fin. Oversight & Mgmt. Bd. for P.R. v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339 (2023) ("*CPI*"). Appellant Miya Water Netherlands B.V. ("Miya") now brings a nearly identical lawsuit seeking Board documents under a Puerto Rico statute. Instead of arguing that federal law abrogated the Board's immunity, Miya tries to show that Puerto Rico waived it. Unfortunately for Miya, it did not absorb the central lesson of the *CPI* case. Waiver of immunity, like abrogation, requires a clear and unmistakable statement of intent, one that cannot be overlooked. As in *CPI,* there is no such clear statement here. Whatever the Puerto Rico statute provides about other governmental entities and other courts, there is nothing remotely approaching a clear and unmistakable statement that the Board may be sued in federal court. For that simple reason, Miya's case is doomed.

Miya's first tack is, in effect, to ignore the substance of the rule. Miya argues that Puerto Rico clearly intended to waive the Board's sovereign immunity from suits in federal court because, if it did not so intend, "it would have said so." Opening Br. 15. This argument flips the rule on its head, requiring a sovereign to affirmatively express its intent *not to* waive sovereign immunity. But that is not the default

presumption. The district court correctly declined Miya's invitation to deem silence as the "unmistakably clear" language necessary to waive immunity.

Failing to circumvent the rule requiring a clear statement to waive immunity in federal court, Miya tries a more direct route. It argues that the clear-statement rule does not apply to the Board because, as a part of the territorial government, the federalism concerns animating the rule do not apply. *See* Opening Br. 17–20. Accordingly, Miya argues, even if this Court concludes that silence cannot constitute a waiver of sovereign immunity, the express waiver of immunity from suits in the Commonwealth's courts should double as a waiver of sovereign immunity in federal courts. As with Miya's primary argument, its alternative argument is an invitation to defy decades-worth of binding precedent, including precedent applying this exact rule to uphold Puerto Rico's sovereign immunity against suit in federal court. The collateral damage from Miya's proposed holding would also be significant, carving a slice out of territorial immunity that would ostensibly subject territories to federal suit for a variety of claims only created and intended for territorial courts. This Court should again decline the invitation and affirm the district court's dismissal.

## STATEMENT OF ISSUES

1. Whether the silence in the Transparency and Expedited Procedure for Public Records Access Act ("TEPPRA") regarding lawsuits against the Board in

federal court can constitute an "unmistakably clear" waiver of the Board's sovereign immunity in federal court.

2.    Whether the long-settled rule that a waiver of sovereign immunity in one sovereign's courts does not constitute a waiver of sovereign immunity in another sovereign's courts applies to the Board.

## STATEMENT OF FACTS

### A.    PROMESA

In June 2016, Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") to address the "fiscal emergency" in Puerto Rico.  48 U.S.C. § 2194(m).  PROMESA established the Board and charged it with developing a method for the Commonwealth to "achieve fiscal responsibility and access to the capital markets."  *Id*. § 2121(a).  In enacting PROMESA, Congress exercised its plenary power "to dispose of and make all needful rules and regulations" for territories, U.S. Const. art. IV, § 3, and made the Board "an entity within the territorial government" of Puerto Rico, 48 U.S.C. § 2121(c)(1).

Notwithstanding the Board's status as a part of Puerto Rico's government, PROMESA contains several provisions designed to ensure that the Board maintains the requisite degree of independence to carry out its mission.  For example, PROMESA provides that neither the Governor nor the Legislature may interfere with, control, review, or oversee the Board's activities.  *Id.* § 2128(a)(1).  The statute

3

further prohibits the Governor and Legislature from enacting, implementing, or enforcing any statute that "would impair or defeat the purposes of [PROMESA], as determined by the Oversight Board." *Id*. § 2128(a)(2).

PROMESA also addresses public disclosure of the Board's activities. The statute identifies the limited circumstances in which public disclosures are required and enumerates specific documents that may not be disclosed. The Board's meetings are public except to the extent that a majority of the Board votes to conduct its business in executive session. *Id*. § 2121(h)(4). Similarly, the Board's bylaws, rules, and procedures governing its activities under PROMESA are public. *Id*. § 2121(h)(1). And § 2124(p) requires the Board to publicize the findings of any investigation that it undertakes pursuant to § 2124(o) concerning the disclosure and selling practices of Commonwealth debt. *Id*. § 2124(o)–(p).

Besides these requirements, Congress gave the Board broad authority to determine whether and when to disclose information publicly. The Board takes that responsibility seriously. It has voluntarily made a wealth of information available to the public through its website, including all contracts between the Board and third parties, the financial disclosure statements made by the Board's members and executive staff, and substantial correspondence between the Board and the Commonwealth and the Federal Governments. *See* https://oversightboard.pr.gov. The website also contains the most critical information concerning the Board's mandate:

every certified fiscal plan; every certified budget; and every confirmed plan of adjustment. *Id.* The website additionally reports certain critical activities by the Board, including its monitoring of compliance with its certified fiscal plans and budgets and its review of certain Commonwealth contracts and governmental rules and regulations. *Id.*

## B.    TEPPRA

In 2019, several years after Congress enacted PROMESA and established the Board, the Puerto Rico Legislature enacted TEPPRA. 3 L.P.R.A. § 9911 et seq. TEPPRA declares that the public policy of the government of Puerto Rico is for government records to be public and that individuals have a right to access those records. *Id.* § 9913. According to TEPPRA's scheme, individuals and entities may request documents from any governmental entity's "public records officer," to which the government entity must respond within a fixed period.[1] *Id.* § 9917. Each government entity is required to designate certain career employees to act as public-records officers. *Id.* § 9915. They must complete specific trainings, process records requests, act as the "main contact" for the entity, and "submit monthly reports" on

---

[1] The Board is comprised of seven members and is supported by an executive director and small staff. 48 U.S.C. § 2121(e). It does not have a public records officer, and because its contemplated existence is temporary, it does not have any "career employee" who can act as one.

the records requests made to the entity. *Id*. In addition, TEPPRA requires govern-
ment entities proactively to disclose certain information about their operations, per-
formance, and employee records, independent of any request. *Id*. § 9914.

If a requestor is unsatisfied with the response from the governmental entity,
TEPPRA provides a special procedure to obtain judicial review of the refusal. Re-
view is available only in the Commonwealth Court of First Instance in the judicial
region where the requestor resides. *Id*. § 9919. The review process is initiated by
filing what is called a "Special Petition for Judicial Review." *Id*. The process is
summary in nature, taking a maximum of fifty-three days from start to finish: thirty
days from the entity's decision to file the Special Petition; ten days for the entity to
respond; three days for the court to hold a hearing, if any; and ten days for a decision
to issue. *Id*.

### C. Procedural History

#### 1. *Miya's TEPPRA Request and Suit*

On May 31, 2022, Miya filed a public-records request with the Board pursuant
to TEPPRA, seeking an expansive set of documents, including every document cre-
ated between September 1, 2018, and May 15, 2022, containing the term "FOMB,"
a common acronym for the Board. JA-13; JA-19–22. Counsel for the Board re-
sponded that the Board is not subject to TEPPRA and advised that the requested
documents could be obtained elsewhere, such as from the Puerto Rico Aqueduct and

Sewer Authority ("PRASA") or the Puerto Rico Public-Private Partnerships Authority ("P3 Authority").  JA-14; JA-26–27.

Miya then filed a complaint in federal court seeking to compel the Board to produce the requested documents on an expedited basis.  JA-1.  The Board moved to dismiss, but the case was ultimately stayed on consent pending the Supreme Court's decision in *CPI*.  JA-7.

## 2. The Supreme Court's **CPI** *Decision*

In *CPI*, Centro de Periodismo Investigativo, Inc. ("CPI"), a media organization, asked the Board to turn over a broad array of materials, *CPI*, 598 U.S. at 344, ultimately bringing a federal suit to compel their production, *see* Dkt. No. 1 in *CPI v. FOMB*, Case No. 17-cv-1743 (D.P.R. June 1, 2017).  CPI asserted that the Board was required to provide it with the requested documents under Article II, § 4 of the Puerto Rico Constitution, which has been interpreted to impose on the Puerto Rico government broad obligations to disclose documents in its possession.  *CPI*, 598 U.S. at 344.

The Board moved to dismiss the suit, invoking its sovereign immunity as a part of the Commonwealth Government.  *CPI*, 598 U.S. at 344.  The district court denied the motion, holding that Congress had abrogated the Board's immunity in PROMESA's jurisdictional provision, 48 U.S.C. § 2126(a).

The case was litigated up to the Supreme Court, which reversed and remanded for dismissal based on the Board's assertion of sovereign immunity. The Court reasoned that "nothing in PROMESA makes Congress's intent to abrogate the Board's sovereign immunity 'unmistakably clear.'" *CPI*, 598 U.S. at 351 (internal citation omitted).

### 3.  *Miya's Case Resumes*

Following the Supreme Court's decision, the parties to this action jointly reinitiated proceedings. JA-7. Miya filed an Amended Complaint, and the Board moved to dismiss on three bases: (1) the Board has sovereign immunity, which divests the federal court of subject-matter jurisdiction; (2) even if the Board lacked sovereign immunity, the peculiar nature of the proceeding that TEPPRA authorizes shows that it was not designed to apply to the Board, and federal courts have no authority to entertain it; and (3) PROMESA preempts TEPPRA to the extent that it applies to the Board, and PROMESA § 108(a) protects the Board from forced document disclosure because it forbids the Governor and Legislature from controlling, reviewing, or overseeing the Board's activities. *See* 48 U.S.C. § 2128(a).

The magistrate judge recommended that the district court grant the Board's motion to dismiss on sovereign immunity grounds. JA-9. First, the magistrate judge concluded that "[i]n line with [the First Circuit's] longstanding precedent, . . . Puerto

Rico enjoys the same sovereign immunity as a state under the Eleventh Amendment," Add.5, and that the Board is an arm of Puerto Rico and thus enjoys the same immunity, Add.11. Second, the magistrate judge concluded that TEPPRA did not waive the Board's sovereign immunity. *Id.* He explained that a waiver must contain "unmistakably clear language, allowing for no other reasonable construction, that [the government] intends to submit itself to the jurisdiction of the federal courts." *Id.* He rejected Miya's argument that 48 U.S.C. § 2126(a) constitutes a waiver of immunity given the Supreme Court's holding in *CPI* that the same provision failed to abrogate immunity. Add.12.[2]

The district court adopted the magistrate judge's recommendation.[3] JA-9–10. Miya appealed.

---

[2] Similarly, the magistrate judge rejected Miya's argument that it would be redundant, and thus unnecessary, for TEPPRA to reference the federal court explicitly because the Puerto Rico legislature knew the Board could only be sued in federal court, reasoning that this argument again runs counter to the Supreme Court's holding in *CPI* that "nothing in PROMESA makes Congress's intent to abrogate the Board's sovereign immunity 'unmistakably clear.'" Add.14. And, because PROMESA's claims-channeling provision is not a waiver of sovereign immunity, language in TEPPRA—legislation that only mentions Commonwealth courts—that explicitly waives sovereign immunity in federal court "would hardly be superfluous." Add.15.

[3] The magistrate judge also addressed the Board's arguments under Federal Rule of Civil Procedure 12(b)(6), but the district court judge set aside that portion of the Report and Recommendation. Add.22.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's ruling that the Board's sovereign immunity stripped the federal court of subject-matter jurisdiction, requiring dismissal of the action. Miya does not contest that the Board enjoys sovereign immunity but argues that TEPPRA waives that immunity in federal court. In the alternative, it contends that Puerto Rico's status as a territory means any waiver of its immunity in its own courts amounts to a waiver in federal court as well, so that TEPPRA subjects the Board to suit. Neither of these theories is viable.

I.     Contrary to Miya's contention, TEPPRA's silence regarding suits against the Board in federal court does not amount to the necessary "unmistakably clear" statement to effectuate waiver. Any such conclusion would unravel decades' worth of binding precedent holding otherwise. Moreover, Miya's argument that the timing of TEPPRA's enactment transforms Puerto Rico's silence regarding TEPPRA-related actions against the Board in federal court into an unmistakable waiver of the Board's immunity is without merit. The absence of clear language waiving the Board's immunity in federal court is fatal to Miya's appeal.

II.     Miya's alternative argument is also meritless. Miya asserts that even if TEPPRA establishes a waiver of sovereign immunity only in Commonwealth courts, that doubles as a waiver of the Board's immunity in federal court by operation of PROMESA's claims-channeling provision, 48 U.S.C. § 2126(a). Miya argues that

10

the Supreme Court's well-settled rule requiring waivers does not apply to the Board because the rule is grounded in federalism concerns that do not apply to a Territory. Miya's argument would have the inescapable effect of stripping Puerto Rico of the immunity it has enjoyed under decades of this Court's precedent. And the argument further fails because the Supreme Court has long recognized the need for a sovereign's clear legislative intent to waive its immunity in another sovereign's courts as a fundamental principle of sovereign immunity.

## STANDARD OF REVIEW

The district court's holding that Puerto Rico did not waive the Board's sovereign immunity in federal court is reviewed *de novo*. *See, e.g.*, *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 47 (1st Cir. 2003) (reviewing questions involving sovereign immunity *de novo*); *see also Davallou v. United States*, 998 F.3d 502, 504 (1st Cir. 2021) ("We review de novo the district court's dismissal for lack of subject-matter jurisdiction.").

## ARGUMENT

In this appeal, Miya does not challenge the Commonwealth's sovereign immunity or its general application to the Board. *See* Opening Br. 13 n.3. Rather, Miya's challenges to the holding below are based solely on its theory of waiver. Miya argues that the Commonwealth waived the Board's sovereign immunity in federal court by passing TEPPRA, as evidenced by the statute's silence and timing.

11

It also argues that the longstanding rule requiring venue-specific statements of waiver does not apply to the Board, meaning that the Commonwealth's waiver of immunity to suit in its own courts under TEPPRA permits suits against the Board in federal court. Neither argument has merit.

## I.   TEPPRA DOES NOT WAIVE THE BOARD'S IMMUNITY IN A FEDERAL FORUM.

It is axiomatic that a waiver of sovereign immunity requires crystal-clear language. As this Court has held, "the State must express in *unmistakably clear language, allowing for no other reasonable construction*, that it intends to submit itself to the jurisdiction of the federal courts." *Maysonet-Robles*, 323 F.3d at 50–51 (emphasis added). Miya concedes the point, stating: "A State waives its immunity when it makes a 'clear declaration that it intends to submit itself to the jurisdiction of the federal courts,' which may be expressed in a State statute or constitutional provision." Opening Br. 13 (quoting *Arecibo Cmty. Health Care, Inc. v. Puerto Rico*, 270 F.3d 17, 24 (1st Cir. 2001)). The operative legal standard derives from the Supreme Court's well-settled rule that "[a]ny ambiguities in the statutory language are to be construed in favor of immunity, [and] no amount of legislative history can supply a waiver that is not clearly evident from the language of the statute." *Dep't of Agric.*

*Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 49 (2024) (quotation marks and citations omitted).[4]

A corollary of this rule is that a sovereign's "waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.9 (1984). Were it otherwise, a waiver of sovereign immunity in federal court could be inferred from other, more limited waivers, undermining the essence of the clear statement rule.

TEPPRA contains *no* reference to a waiver of sovereign immunity in federal court, however, let alone a clear one. Although TEPPRA applies to "all government entities" within the government of Puerto Rico, 3 L.P.R.A. § 9912, when TEPPRA addresses avenues for judicial review, it mentions expressly—and exclusively—the Commonwealth's courts. As TEPPRA provides, if a government entity refuses or fails to deliver material that has been requested, the requestor is entitled to file "a Special Petition for Public Records Disclosure Order with the Court of First Instance

---

[4] *See also FAA v. Cooper*, 566 U.S. 284, 290 (2012) ("We have said on many occasions that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text."); *Lane v. Peña*, 518 U.S. 187, 192 (1996) (same); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992) (same); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (same).

of the Judicial Region of his residence." *Id*. § 9919. There is no reference to federal court in any provision of TEPPRA.

This is therefore not a case where the Court must decide whether a given statutory provision is sufficiently clear for waiver purposes because there is no waiver provision in the first place. Rather than support Miya's interpretation, TEPPRA's silence defeats it, and this Court's analysis can and should stop there.

A. **No Court Has Ever Relied on a Statute's Silence and Timing to Find a Waiver of Sovereign Immunity, because That Is the Antithesis of a Clear Statement.**

Because TEPPRA does not expressly waive the Board's immunity in federal court, Miya attempts to establish a waiver by inference. Miya asserts that TEPPRA's "silence" as to a waiver of the Board's immunity in federal court, coupled with the fact that TEPPRA was enacted after PROMESA, constitutes a waiver of the Board's immunity in federal court because (i) TEPPRA applies broadly to *all* Puerto Rico government entities, including the Board, and (ii) the Commonwealth knew that the Board can only be sued in federal court, thereby making the mention of federal court unnecessary. Opening Br. 14–17. That position cannot be reconciled with controlling authority.

"[O]ne way or another, a waiver of sovereign immunity must be 'unmistakably clear *in the language* of the statute.'" *Kirtz*, 601 U.S. at 49 (emphasis added). And courts weigh statutory ambiguities in favor of preserving immunity "so that the

14

Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *Cooper*, 566 U.S. at 290 (internal citations omitted). Under the "clear and unmistakable" standard, a statute's silence and timing cannot constitute a waiver of sovereign immunity, and Miya cites no case holding otherwise.

Despite clear and binding instructions for how this Court should conduct its waiver analysis, Miya urges the Court to do the opposite: ignore what Puerto Rico *did* say in TEPPRA and find a waiver of immunity based on what Puerto Rico did *not* say. *See* Opening Br. 16 ("TEPPRA's silence as to the Board reflects the Commonwealth's unmistakable waiver of the Board's immunity from suit in federal court."). That screams error. Just as the Supreme Court has explained that "no amount of legislative history can supply a waiver that is not clearly evident from the language of the statute," *Kirtz*, 601 U.S. at 49 (quotation marks and citations omitted), inferences cannot fill the void created by the absence of clear language.

### B. Even if a Statute's Silence and Timing Could Somehow Evidence an Unmistakably Clear Waiver, Those Factors Cut Against a Finding of Waiver Here.

Even if this Court were to entertain Miya's erroneous approach in relying upon inferences from silence and timing, those factors strongly suggest that the Commonwealth intended to *preserve* the Board's immunity in federal court. Miya's argument is littered with weak inferences—reasoning that because TEPPRA was enacted after PROMESA (which requires that any action against the Board be

15

brought in federal court), the Commonwealth must have known that the Board could be sued only in federal court, and therefore the Commonwealth would have said something if it intended to exclude the Board from TEPPRA's coverage. *See* Opening Br. 15.

To the contrary, TEPPRA's unmistakably clear waiver of the Commonwealth's sovereign immunity in its own courts shows that the Commonwealth was aware of the controlling legal standard and knew how to make the sort of clear statement necessary to waive immunity.[5] Because the Commonwealth knew how to waive sovereign immunity, it is more likely that it intentionally did not include any mention of federal court, thereby preserving immunity. Similarly, because the Commonwealth waived its immunity in one judicial forum through clear language, it is unreasonable to assume that it would choose to waive sovereign immunity in federal courts through silence, especially where the law requires the former.

What's more, TEPPRA contemplates Commonwealth-specific procedures that would be inconsistent with an intent for TEPPRA claims to be brought in federal court. TEPPRA begins with request procedures, makes review of denials available

---

[5] *See* 3 L.P.R.A. § 9919 (providing that "Any person to whom a government entity has notified its decision not to deliver the record requested or has failed to deliver such record . . . shall be entitled to file . . . a Special Petition for Public Records Disclosure Order with the Court of First Instance of the Judicial Region of his residence.").

in one specific Commonwealth Court through a special statutory petitioning procedure, and provides for summary proceedings with strictly delineated deadlines. 3 L.P.R.A. §§ 9917, 9919. Those statutory features show that if Puerto Rico intended to subject itself to TEPPRA claims, the claims can be brought exclusively in its own courts.

Ultimately, whether one assumption is more persuasive than the other is immaterial: At best, TEPPRA is ambiguous as to whether the Commonwealth sought to waive the Board's immunity in federal court. And "[a]ny ambiguities in the statutory language are to be construed in favor of immunity . . . ." *Cooper*, 566 U.S. at 290 (internal citations omitted).[6] The position Miya advocates extends beyond a fair reading of TEPPRA and would require governments to affirmatively preserve immunity to prevent waivers. That is the opposite of the rule. If the Commonwealth

---

[6] The additional authority Miya cites to support its assertions actually does the opposite. For example, Miya cites *Hospital San Antonio, Inc. v. Oquendo-Lorenzo* ("*HSA*"), for the proposition that this Court's "interpretation of Puerto Rico statutes 'begins with the text of the underlying statute, and ends there as well if the text is unambiguous.'" 47 F.4th 1, 7 (1st Cir. 2022) (quoting S*cotiabank de P.R. v. Burgos*, 741 F.3d 269, 274 (1st Cir. 2014)); *see also id.* at 11 (declining to adopt HSA's interpretation of the statutes because its "suggested interpretation bends the text of the statute too far"). That proposition does not help Miya because there is no unambiguous waiver of the Board's immunity in federal court in this case. *HSA* did not involve a sovereign's waiver of immunity in any case, and thus the Court's analysis was not performed through the lens of the applicable "unmistakably clear language" standard.

intended to waive the Board's sovereign immunity in federal court under TEPPRA, it would have said so. Indeed, it needed to say so. It did not.

## II. THE COMMONWEALTH'S WAIVER OF SOVEREIGN IMMUNITY IN ITS OWN COURTS DOES NOT CONSTITUTE WAIVER OF IMMUNITY IN FEDERAL COURT.

If TEPPRA establishes a waiver of sovereign immunity only in Commonwealth courts, then it cannot be enforced against the Board in federal court. As the Supreme Court has held, "a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst*, 465 U.S. at 99 n.9; *see also Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).

To get around this roadblock, Miya's alternative argument is that the *Pennhurst* principle does not apply to the Board. *See* Opening Br. 17–20. Although Miya's argument is difficult to follow, it appears to hinge on PROMESA § 106(a), the claims-channeling provision that requires all actions against the Board to be brought in federal court. *See* 48 U.S.C. § 2126(a). According to Miya, because Congress expressly invoked its powers under the Territory Clause to establish the Board as an entity within the territorial government of Puerto Rico, the Eleventh Amendment does not come into play. Opening Br. 17–19. Therefore, Congress had broad latitude to subject the Board to suit, notwithstanding the Eleventh Amendment's shield that ordinarily prevents federal courts from entertaining actions against

18

states absent express state consent. And Congress supposedly exercised that power when it passed § 2126(a), which channels into federal court TEPPRA claims against the Board over which the Commonwealth waived immunity.

This Rube-Goldbergian theory has many flaws. *First,* the theory proves too much. The Territory Clause is not merely the source of legislative authority for PROMESA; it is the entire basis of the United States' authority over Puerto Rico. *See, e.g.*, *Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 77 (2016). If Miya were correct, then the Eleventh Amendment would never shield Puerto Rico from suit. But it is settled law that it does. *See, e.g.*, *Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 33 (1st Cir. 2020) ("Puerto Rico is treated as a state for Eleventh Amendment purposes[.]"); *accord Grajales v. P.R. Ports Auth.*, 831 F.3d 11, 15 (1st Cir. 2016); *Acevedo Lopez v. Police Dep't of Com. of P.R.*, 247 F.3d 26, 28 (1st Cir. 2001); *accord Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. González-Feliciano*, 695 F.3d 83, 103 n.15 (1st Cir. 2012); *Maysonet-Robles*, 323 F.3d at 50; *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 121 (1st Cir. 1991). Indeed, this Court has held that *Pennhurst* itself applies to Puerto Rico. *See Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 33 (1st Cir. 2006) ("But the Commonwealth's 'waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts.'") (quoting *Pennhurst*, 465 U.S. at 99 n.9)).

Miya contends that the Supreme Court "explicitly left open the question of whether and to what extent the Board enjoys immunity." Miya's Opening Br. 18. That is incorrect. The *CPI* Court observed that "Circuit precedent had settled Puerto Rico's own immunity." 598 U.S. at 346. As for the Board, Miya concedes that it is an arm of the Commonwealth and thus enjoys the same degree of immunity as the Commonwealth. Opening Br. 13 n.3. It follows inexorably that the Board is protected by the Eleventh Amendment.

*Second*, even if the Eleventh Amendment somehow did not apply to Puerto Rico, the principle that a waiver of sovereign immunity in the sovereign's *own* court does not work in a *different* sovereign's court is not limited to the Eleventh Amendment context. It is an aspect of sovereignty in general, whether based in the Eleventh Amendment, common-law immunity, or something else. Indeed, the premise of the clear and unmistakable rule is that the sovereign does not lightly give up its immunity, and one cannot infer waiver in one setting from waiver in another.

For example, in *Great Northern Life Insurance Company v. Reed*, 322 U.S. 47 (1944), the Supreme Court considered whether an Oklahoma statute permitting private suits against the state in its own courts for the recovery of wrongful tax collections also permitted such private suits to be brought in federal court. Drawing on general principles of sovereignty, the Court reasoned that the aims of immunity from

litigation compelled an answer in the negative. *Id.* "The history of sovereign immunity and the practical necessity of unfettered freedom for government from crippling interferences require a restriction of suability to the terms of the consent, as to persons, courts and procedures." *Id.* Accordingly, the Court held that, in "dealing with the sovereign exemption from judicial interference," there must be "a clear declaration of the state's intention to submit . . . to other courts than those of its own creation[.]" *Id.* at 54. The Court concluded that no such declaration existed.

*Third*, even if Congress *could have* decided to eliminate the clear-and-unmistakable test for suits against the Board in federal court, there is no reason to think that the purpose of 48 U.S.C. § 2126(a) was actually to do so. In *CPI,* the Supreme Court held that § 2126 did not abrogate the Board's immunity. 598 U.S. at 351. If § 2126(a) did not aim to make it easier to sue the Board, then it is hard to see how that provision would lower the standard for showing that the Commonwealth intended to waive the Board's immunity. To the contrary, the Supreme Court viewed the function of § 2126(a) as providing a vehicle for litigation against the Board in federal court where *other* statutes abrogated the Board's immunity from particular claims, or where the Board decided to waive its own immunity. *Id.* at 349–50. There was no suggestion that § 2126(a) simultaneously facilitated the abrogation or waiver of immunity by those other statutes.

## **CONCLUSION**

For the foregoing reasons, the district court's order should be affirmed.

Dated:  October 23, 2024

Respectfully submitted,

*/s/ Timothy W. Mungovan*

<div style="display: flex;">

TIMOTHY W. MUNGOVAN
JOHN E. ROBERTS
LAURA E. STAFFORD
ADAM L. DEMING
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
Tel: (617) 526-9600
tmungovan@proskauer.com
jroberts@proskauer.com
lstafford@proskauer.com
ademing@proskauer.com

GUY BRENNER
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW,
Suite 600 South
Washington, DC 20004
Tel: (202) 416-6800
gbrenner@proskauer.com

MARTIN J. BIENENSTOCK
MARK D. HARRIS
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Tel: (212) 969-3000
mbienenstock@proskauer.com
mharris@proskauer.com

</div>

*Attorneys for Defendant-Appellee Financial Oversight and Management Board for Puerto Rico*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this document complies with the type-volume limitations set forth in Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,982 words.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14 point Times New Roman font.

Dated: October 23, 2024

*/s/ Timothy W. Mungovan*
Timothy W. Mungovan

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on October 23, 2024, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system, which will send notifications of such filing to all CM/ECF counsel of record.


*/s/ Timothy W. Mungovan*
Timothy W. Mungovan