# United States Court of Appeals
## for the
# First Circuit

Case No. 24-1286

MIYA WATER PROJECTS NETHERLANDS B.V.,

*Plaintiff-Appellant,*

v.

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO, SAN JUAN, IN CASE NO. 3:22-CV-01358-
PAD, HONORABLE PEDRO A. DELGADO HERNÁNDEZ,
DISTRICT JUDGE

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

RICARDO F. CASELLAS
DIANA PÉREZ SEDA
CARLA S. LOUBRIEL
CASELLAS ALCOVER
 & BURGOS P.S.C.
P.O. Box 364924
San Juan, Puerto Rico 00936
Telephone: +1 787.756.1400

TARA M. LEE
SCOTT E. LERNER
BENEDICT S. BERNSTEIN
WHITE & CASE LLP
701 13th Street NW
Washington, DC 20005
Telephone: +1 202.626.3600

*Counsel for Plaintiff-Appellant*

CP COUNSEL PRESS   (800) 4-APPEAL • (332491)

# **TABLE OF CONTENTS**

                                                             **Page**

TABLE OF AUTHORITIES ................................................................... ii

PRELIMINARY STATEMENT ............................................................. 1

ARGUMENT ........................................................................................ 2

I.     THE EXPRESS LANGUAGE AND OVERWHELMING IMPLICATION OF TEPPRA'S TEXT REFLECT THE COMMONWEALTH'S CONSENT TO SUITS AGAINST THE BOARD IN FEDERAL COURT ....................................................... 2

II.    THE BOARD DOES NOT SHARE IN ANY IMMUNITY FROM SUIT IN FEDERAL COURT ENJOYED BY THE COMMONWEALTH ........................................................................ 7

CONCLUSION .................................................................................... 11

CERTIFICATE OF COMPLIANCE .................................................... 13

CERTIFICATE OF SERVICE .............................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Commissioners of Rd. Improvement v. St. Louis S. R. Co.*,
    257 U.S. 547 (1922) .................................................................................. 7

*Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
    601 U.S. 42 (2024) (cited at Response Br. ) ........................................... 4

*Financia Oversight & Mgmt. Bd. for P.R. v. Centro de Periodismo
Investigativo, Inc.*,
    598 U.S. 339 (2023) ............................................................................ 4, 11

*Great N. Life Insurance Co. v. Read*,
    322 U.S. 47 (1944) ............................................................................. 9, 10

*Lee-Thomas v. Prince George's Cnty. Pub. Schs.*,
    666 F.3d 244 (4th Cir. 2012) .................................................................. 6

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ......................................................................... 2, 6, 9

*Port Auth. Trans-Hudson Corp. v. Feeney*,
    495 U.S. 299 (1990) ................................................................................ 3

*Pride Chrysler Plymouth v. R.I. Motor Vehicle Dealers' License
Comm'n*,
    721 F. Supp. 17 (D.R.I. 1989) ................................................................ 6

*Safeway, Inc. v. Sugarloaf P'ship, LLC*,
    423 F. Supp. 2d 531 (D. Md. 2006) ....................................................... 7

*Tang v. R.I. Dep't of Elderly Affs.*,
    904 F. Supp. 55 (D.R.I. 1995)
    .................................................................................................................. 6

*Weems v. McCloud*,
    619 F.2d 1081 (5th Cir. 1980) ................................................................ 7

## STATUTES

3 L.P.R.A. § 9911 note ............................................................................ 4

3 L.P.R.A. § 9912 ................................................................................... 3

3 L.P.R.A. § 9917 ................................................................................... 7

3 L.P.R.A. § 9919 ................................................................................ 3, 7

48 U.S.C. § 2103 ................................................................................. 5, 9

48 U.S.C. § 2121(c)(1) ............................................................................ 3

48 U.S.C. § 2126(a) ............................................................................ 4, 9

# **PRELIMINARY STATEMENT**

The Board insists that, as part of the territorial government of Puerto Rico, it shares in all of the protections enjoyed by the Commonwealth but, as a creature of federal law, it is subject to none of the accompanying obligations. The Board thus concedes that TEPPRA waives the immunity of every entity within the Commonwealth's territorial government, including the Board. But according to the Board, PROMESA's claim-channeling provision renders that waiver a dead letter.

In contrast, Miya's opening brief offered this Court two paths to effectuate the Commonwealth's unmistakable intent to make the Board amenable to suits arising under TEPPRA. The first hews to this Court's precedents applying the Eleventh Amendment framework to the Commonwealth. Under that framework, TEPPRA's express language and the overwhelming implication of its text reflect the Commonwealth's unmistakable consent to suits against the Board in federal court.

The alternate path dispenses with the false premise that the Board enjoys the same immunity from suit in federal court as does an arm of a State. Whatever immunity the Commonwealth may enjoy from suits in

1

federal court, there is no principled basis to extend such immunity to the Board. Indeed, "the principles of federalism" that animate *Pennhurst* have no relevance to the Board—a creature of federal statute enacted under the Territory Clause. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (cleaned up).

The Board fails to offer any coherent third path that would lead to its preferred outcome. Because the Board has no meaningful response to Miya's arguments, it resorts to strawmen and feigned confusion. Miya does not contend that the Commonwealth waived the Board's immunity through "silence." Response Br. at 2, 10–17. And to the extent the Board found it "difficult to follow" the reasons why *Pennhurst* does not apply to the Board, it could have easily referred to the same arguments in the amicus brief filed by the United States in *CPI II*, which Miya freely cited. Response Br. at 18; *see* Opening Br. at 18–20.

## ARGUMENT

### I. THE EXPRESS LANGUAGE AND OVERWHELMING IMPLICATION OF TEPPRA'S TEXT REFLECT THE COMMONWEALTH'S CONSENT TO SUITS AGAINST THE BOARD IN FEDERAL COURT

The Board concedes that TEPPRA unmistakably waives sovereign immunity for every entity within the Commonwealth's territorial govern-

ment.  *See* Response Br. at 16; 3 L.P.R.A. §§ 9912, 9919.  The Board concedes that it is such an entity.  Response Br. at 3; *see* 48 U.S.C. § 2121(c)(1).  And the Board concedes that PROMESA § 106(a) "provid[es] a vehicle for litigation against the Board in federal court where other statutes abrogate[] the Board's immunity from particular claims."  Response Br. at 21 (emphasis omitted) (citing *Fin. Oversight & Mgmt. Bd. for P.R. v. Centro de Periodismo Investigativo, Inc.* ("*CPI II*"), 598 U.S. 339, 349–59 (2023)).  But rather than authorizing this action, the Board contends that this provision means the Board is never amenable to suits arising under TEPPRA.

Because its position is untenable, the Board sets up a strawman, centering its Brief on TEPPRA's supposed "silence"—a word the Board uses 14 times, including twice in headings, despite it appearing only once in Miya's Opening Brief.  *Compare* Response Br. at 2, 10, 11, 14, 15, 16, *with* Opening Br. at 16.  Miya does not contend that the Commonwealth effectuated its clear and unmistakable waiver of the Board's immunity through silence.  Rather, the "express language" and "overwhelming implication [of] the text" of TEPPRA "leave[s] no room for any other reasonable construction."  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495

3

U.S. 299, 305 (1990) (quotation marks omitted); *see* Opening Br. at 12–17. To hold otherwise would impermissibly "negate[] th[at] authorization" for suits against the Board. *CPI II*, 598 U.S. at 348.

Contrary to the Board's assertion, there is nothing "ambiguous" about TEPPRA's application to the Board. Response Br. at 17. The Commonwealth's intent to make every entity within its territorial government, including the Board, amenable to suits arising under TEPPRA could not be more "clearly evident from the language of the statute." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 U.S. 42, 49 (2024) (cited at Response Br. at 12); *see* Opening Br. at 16–17 (collecting provisions). Indeed, TEPPRA reflects the Commonwealth's "express and unequivocal will . . . that the courts enforce the provisions and application [of TEPPRA] to the greatest extent possible." 3 L.P.R.A. § 9911 note.

It is of no moment that TEPPRA itself does not explicitly refer to suits against the Board being brought in federal court. *See* Response Br. at 13. That reference is found in PROMESA. *See* 48 U.S.C. § 2126(a). By setting up the Board as part of the Commonwealth's territorial government, Congress made the Board subject to all "general or specific

provisions of [Commonwealth] law" except those preempted by PROMESA. *Id.* § 2103 ("The provisions of this chapter shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this chapter."). The Commonwealth thus made TEPPRA applicable to the Board subject to the limitations imposed by PROMESA, including its claims-channeling provision.

To avoid the express language of TEPPRA and the overwhelming implication of its text in light of PROMESA, the Board invents a double-clear-statement rule. *See* Response Br. at 13. Under the rule urged by the Board, a State's consent to suit in federal court, no matter how broadly expressed, would not apply to subsequent waivers of sovereign immunity absent an express cross-reference or re-enactment. *See id.* at 13–15. Thus, the Commonwealth's expansive waiver of the Board's immunity from suit is ineffective because TEPPRA does not explicitly cross-reference PROMESA's claims-channeling provision. *See id.* And if TEPPRA intended to waive the Board's immunity, the Commonwealth would have separately reiterated PROMESA's grant of an exclusive federal forum for suits against the Board. *See id.*

*Pennhurst* does not support that rule. *Pennhurst* holds that "[a]

5

State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where*." 465 U.S. at 99 (italics in original). But Nothing in *Pennhurst* suggests that courts should ignore a State's answers to those questions. By enacting TEPPRA, the Commonwealth answered the question of *whether* the Board can be sued with full knowledge that PROMESA preemptively supplied the *where*. The Commonwealth's manifest intent to make the Board amenable to suits under TEPPRA cannot be dismissed as mere "silence and timing," Response Br. at 15.

Nor is there any merit to the Board's implication that the Eleventh Amendment requires the cause of action and consent to federal jurisdiction be found in the same statute. *See id.* at 15–16; *see also, e.g.*, *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 253–54 (4th Cir. 2012) (finding State statute waived sovereign immunity in action arising under Americans with Disabilities Act); *Tang v. R.I. Dep't of Elderly Affs.*, 904 F. Supp. 55, 63 (D.R.I. 1995) (same in action arising under 42 U.S.C. § 1981); *Pride Chrysler Plymouth v. R.I. Motor Vehicle Dealers' License Comm'n*, 721 F. Supp. 17, 22 (D.R.I. 1989) (same in action arising under 42 U.S.C. §1983).

Likewise, the Board's contention that the Commonwealth-specific procedures envisioned by TEPPRA negate the Commonwealth's consent to suits against the Board finds no support in the case law and the Board cites none. *See* Response Br. at 16–17; 3 L.P.R.A. §§ 9917, 9919; *see also, e.g.*, *Comm'rs of Rd. Improvement v. St. Louis S. R. Co.*, 257 U.S. 547, 553–54 (1922) (holding procedures uniquely available in state court did not alter availability of federal jurisdiction for suit); *Weems v. McCloud,* 619 F.2d 1081, 1087 (5th Cir. 1980) (same); *Safeway, Inc. v. Sugarloaf P'ship, LLC,* 423 F. Supp. 2d 531, 535–36 (D. Md. 2006) (same).

Under the guise of the Eleventh Amendment, the Board asks this Court to negate the Commonwealth's clearly expressed intent to make the Board amenable to suits under TEPPRA. But the only reading of TEPPRA that accords the respect for dual sovereignty embodied in the Eleventh Amendment is one that gives full effect to the Commonwealth's unmistakable consent to suits against the Board.

## II. THE BOARD DOES NOT SHARE IN ANY IMMUNITY FROM SUIT IN FEDERAL COURT ENJOYED BY THE COMMONWEALTH

The Board attempts to escape TEPPRA's waiver of its sovereign immunity by wielding *Pennhurst* as a cudgel against the Commonwealth.

7

As the Board would have it, under *Pennhurst*, respect for the Commonwealth's sovereignty requires that the Board never be amenable to suits arising under TEPPRA because Congress provided exclusive federal jurisdiction for such suits. *See* Response Br. at 18–21. The illogic of the Board's position confirms the absence of any principled justification for the Board's reliance on *Pennhurst*.

As the United States has explained, "*Pennhurst*'s limitation on federal courts imposing injunctive relief on [S]tate officials for violations of [S]tate law does not apply to territorial officials or governmental entities over which the federal government has plenary control," such as the Board. Br. for U.S. as Amicus Curiae, *Fin. Oversight & Mgmt. Bd. for P.R. v. Centro de Periodismo Investigativo, Inc.*, No. 22-96. (Nov. 23, 2023 U.S.) ("U.S. *CPI* Br.") at 30. Because the Board can offer no coherent explanation for why it should nevertheless enjoy the protections of *Pennhurst*, the Board begs the question, asserting that this Court's precedents applying the Eleventh Amendment to the Commonwealth resolve the matter.[1] *See* Response Br. at 19–20. While the United States urges

---

[1] The Board erroneously asserts that Miya "concedes" that the Board "enjoys the same degree of immunity as the Commonwealth." Response Br. at 20 (citing Opening Br. at 13 n.3). As its Opening Brief made clear,

8

that those precedents are "incorrect," U.S. *CPI* Br. at 15, this Court need not revisit them to reject the Board's contention.

Whatever *Pennhurst*'s application to the Commonwealth may be, the "principles of federalism," 465 U.S. at 100 (cleaned up), that underpin its rule have no application to the Board—an entity imposed on the Commonwealth by federal law. In establishing the Board within the Commonwealth's territorial government, Congress expressly preempted any effort by the Commonwealth to subject the Board to suit in Commonwealth courts. *See* 48 U.S.C. §§ 2103, 2126(a). Applying *Pennhurst* to the Board thus offers no protection against the "intrusion on [Commonwealth] sovereignty" worked by "a federal court instruct[ing] [the Board] on how to conform [its] conduct to [Commonwealth] law." *Pennhurst*, 465 U.S. at 106. By operation of federal law *only* a federal court has such power.

The Board misrelies on *Great Northern Life Insurance Co. v. Read*,

---

however, Miya expressly "contests that the Eleventh Amendment provides the correct framework for assessing the sovereign immunity of the Board." Opening Br. at 13 n.3. Miya's decision not to challenge whether the Board is an arm of the Commonwealth "to the extent this Court concludes that the Eleventh Amendment arm-of-the-State analysis properly applies" is not a concession that the Board enjoys the same immunity as the Commonwealth may enjoy. *Id.*

322 U.S. 47 (1944), to argue that its purported immunity from suit in federal court "is not limited to the Eleventh Amendment context." Response Br. at 20. As an initial matter, *Great Northern* was decided under the Eleventh Amendment. *See* 322 U.S. at 52–53 (holding suit was against the State and therefore subject to the limitations of the Eleventh Amendment) (citing *Smith v. Reeves*, 178 U.S. 436 (1900) (applying Eleventh Amendment) and *Reagan v. Farmers' Loan & Tr. Co.*, 154 U.S. 362 (1894) (same)).

Moreover, *Great Northern* in fact supports the conclusion that there is no basis to extend immunity from suit in federal court to the Board. Like *Pennhurst*, *Great Northern* recognizes that the limitation on suits against States in federal court stems from the "dual system" of federalism, 322 U.S. at 54, which is of no relevance to the Board. And *Great Northern* instructs that, in reviewing a State's consent to suit, courts must give effect to "the terms of the consent, as to persons, courts and procedures." *Id.* at 54. Here, that means giving effect to both TEPPRA's waiver of the Board's immunity from suit and PROMESA's provision of a federal forum for such suits.

Finally, nothing in *CPI II* suggests that the Board enjoys the pro-

tections of *Pennhurst*. *See* Response Br. at 21. That issue was not presented to the Supreme Court, which "assume[d] without deciding that Puerto Rico is immune from suit in federal district court, and that the Board partakes of that immunity." *CPI II*, 598 U.S. at 346. In any event, *CPI II* confirms that the Board is amenable to suit in federal court. As the Supreme Court explained, PROMESA § 106(a) expressly "contemplate[s] the possibility of suits—and of relief—against the Board" in federal court where, as here, "statutes other than PROMESA abrogate the Board's immunity from particular claims." *Id.* at 349; *see* Response Br. at 21 (conceding that PROMESA § 106(a) "provid[es] a vehicle for litigation against the Board in federal court where *other* statutes abrogate[] the Board's immunity from particular claims" (italics supplied)).

## **CONCLUSION**

For the foregoing reasons and those stated in Miya's Opening Brief, the Court should reverse the judgment of the district court dismissing the case, and remand for further proceedings.

Dated: November 13, 2024

Ricardo F. Casellas
Diana Pérez Seda
Carla S. Loubriel
CASELLAS ALCOVER &
  BURGOS, P.S.C.
P.O. Box 364924
San Juan, Puerto Rico 00936
Telephone: (787) 756-1400
Facsimile: (787) 756-1401
rcasellas@cabprlaw.com
dperez@cabprlaw.com
cloubriel@cabprlaw.com

Respectfully submitted,

  *s/ Tara M. Lee*
Tara M. Lee
Scott E. Lerner
Benedict S. Bernstein
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:   +1 202 626 3600
Facsimile: +1 202 639 9355
tara.lee@whitecase.com
scott.lerner@whitecase.com
benedict.bernstein@whitecase.com

*Counsel for Plaintiff-Appellant
Miya Water Projects Netherlands B.V.*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this documents complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. 32(f), this document contains 2,398 words.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14 point Century Schoolbook font

*s/ Tara M. Lee*
Tara M. Lee

# CERTIFICATE OF SERVICE

I hereby certify that, on November 13, 2024, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system, which electronically served a copy on all counsel of record.

*s/ Tara M. Lee*
Tara M. Lee